UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| VANESSA CHAVEZ, AMY BERLAK, BROOKE GRAHAM and MELISSA VARNER on behalf of themselves and all others similarly situated<br><br>Plaintiffs,<br><br>vs.<br><br>T & B MANAGEMENT, LLC and T & B CONCEPTS OF HICKORY, LLC, each d/b/a HICKORY TAVERN,<br><br>Defendants. | Case No. 1:16-cv-01019<br><br>PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO STRIKE PLAINTIFFS' CONSENT FORMS |

Plaintiffs, Vanessa Chavez ("Chavez"), Amy Berlak ("Berlak"), Brooke Graham ("Graham") and Melissa Varner ("Varner") (collectively the "Named Plaintiffs"), on behalf of themselves and all others similarly situated, by and through the undersigned counsel, and hereby respond to Defendants T & B Management, LLC and T & B Concepts of Hickory, LLC's, each d/b/a Hickory Tavern (collectively "Hickory Tavern" or "Defendants") Motion and Memorandum to Strike Plaintiffs' Consent Forms ("Motion") as follows:

## FACTUAL SUMMARY

Plaintiff Chavez filed her Complaint (D.E. 1) on behalf of herself and all others similarly situated on August 1, 2016. Plaintiffs Chavez, Berlak, Graham, and Varner filed their Amended Complaint (D.E. 6) on August 19, 2016. Plaintiffs' Amended Complaint

is filed as a collective action pursuant to the Fair Labor Standards Act of 1938[1] ("FLSA"), as amended in 29 U.S.C. §§ 201, *et seq*. To date, ten additional individuals have filed consent forms to opt-in and join the collective action (D.E. 7-12, 17-19, and 27[2]). Hickory Tavern's Motion seeks to have the consent forms of the ten putative opt-in plaintiffs struck and their opt-in joinder denied.

Pursuant to the FLSA, in order to stop the statute of limitations from running against them, putative class members must "opt-in" by filing consent to join forms. *Barton v. Pantry*, 2006 WL 2568462 at *1 (M.D.N.C. Aug 31, 2006). No employee can be a party plaintiff to any FLSA action – and thus benefit from it – unless they give their consent and such consent is filed with the court in which the action is brought. *Adams v. Citicorp Credit Services, Inc.*, 93 F.Supp.3d 441, 452 (M.D.N.C 2015), citing 29 U.S.C. § 216(b). In *Adams*, this Court found that as a result of the FLSA requirements that party plaintiffs must consent to join and opt-in, certification under the FLSA requires (1) that the class be similarly situated, and (2) that plaintiffs opt-in by filing their consent forms *Id.,* citing *Yerger v. Liberty Mut.Grp.*, 2011 WL 5593151, at *3 (E.D.N.C. Nov. 15, 2011). *Adams* is particularly influential to Plaintiffs in this matter in that the undersigned

---

[1] Chavez' original Complaint was also filed as a collective FLSA action. The Amended Complaint added Berlak, Graham and Varner as named Plaintiffs.

[2] Hickory Tavern seeks to have nine putative opt-in plaintiffs denied joinder in their Motion. The Consent to Join and Become Party Plaintiff of the tenth opt-in, Katharina Keener (D.E. 27), was filed after Defendants' Motion. For the purpose of responding to Hickory Tavern's Motion, Plaintiffs consider Defendants' Motion to request that all ten opt-in plaintiffs be denied joinder.

counsel also represented the plaintiffs in *Adams*. A copy of the Court's Docket Sheet for *Adams* is attached hereto as Exhibit A[3].

In *Adams*, four named plaintiffs filed their Amended Complaint on May 14, 2012 asserting a collective action under the FLSA. *Adams* D.E. 23. Each of the four named plaintiffs in *Adams* filed consent forms with their Amended Complaint[4]. *Adams* D.E. 24-27. The *Adams* plaintiffs then filed their motion for conditional certification as a collective action on June 29, 2012. *Adams* D.E. 37. Over the next five months, between July 18, 2012 and December 10, 2012, nineteen different plaintiffs filed consent forms to opt-in to the action. *Adams* D.E. 41-45, 49-56, 59, 62, 64, 69, and 72. Thereafter, the Court did not issue its Memorandum and Opinion Order granting conditional certification until March 20, 2015. *Adams* D.E. 83. During the nearly three years between when the plaintiffs in *Adams* filed their motion for condition certification and when the Court granted certification, neither the defendant therein, nor the Court, complained about the consent to join forms of the 19 opt-in plaintiffs, or the four opt-in forms of the named plaintiffs.

Although the parties in *Adams* eventually settled, there was such a lengthy time gap between when the plaintiffs' motion for conditional certification was filed, and when certification was granted, that many potential party plaintiffs would be time barred from joining the action after certification was granted. As this Court noted in *Barton*, until

---

[3] The *Adams* Docket Sheet entries are referenced as "*Adams* D.E. ___."
[4] Hickory Tavern complains, without any support or authority, that the four opt-in Consent Forms filed herein by Chavez, Berlak, Graham, and Varner "are unnecessary" and "should be stricken." See: Footnote 2 of Defendants' Motion and Memorandum to Strike Plaintiffs' Consent Forms (D.E. 22), hereinafter "Motion, pg.___."

3

*Adams* settled, only the nineteen opt-in plaintiffs would have had their limitations tolled. Thus, Plaintiffs were concerned that as time passed in this action, some potential Hickory Tavern employees may lose some, or all, or their rights for unpaid wages as alleged. Moreover, having Hickory Tavern employees file consent forms to opt-in before any certification is requested or granted is allowed. To be clear, as is shown below, the fact that Plaintiffs filed consent forms for opt-in plaintiffs before conditional certification is granted is not unique, nor without authority.

## PRE-NOTICE CONSENT FORMS ARE ALLOWED

In *Hoffman-La Roche, Inc. v. Sperling*, 493 U.S. 165 (1989) the seminal case describing the process by which notice is provided to a putative class and how consent and opt-ins are to occur in collective actions, over 400 consent forms were filed **before** the plaintiff moved for court assistance with a notice process. See: *Hoffman-La Roche, Inc. v. Sperling*, 493 U.S. 165, 168 (1989) (addressing parallel provisions of collective actions in the Age Discrimination in Employment Act in 29 U.S.C. § 216(b)). In *Hoffman-La Roche*, the plaintiff, "with assistance of counsel" formed a group of employees who mailed letters "to some 600 employees whom it identified as potential members of the protected class." *Id*. The employer in *Hoffman-La Roche* moved the District Court to invalidate all opt-in consent forms filed **before** the plaintiff requested court assistance with the notice process. *Id*. The employer based its motion to invalidate "on the ground that the solicitation had been misleading." *Id*. The District Court refused to invalidate the consent forms and allowed the opt-in plaintiffs to proceed. *Id*. at 169. Through the Court of Appeals and the Supreme Court, the District Court's ruling refusing

4

to invalidate over 400 consent forms and deny those employees joinder in the action was not overturned. *Id*. at 486.

In the leading Fourth Circuit case on FLSA collective actions, 125 consent forms were secured **before** a motion for court approval of a notice process was filed. *Shaffer v. Farm Fresh, Inc.*, 966 F.2d 142, 144 (4th Cir. 1992). In *Schaffer*, written questionnaires and consent forms were circulated to Farm Fresh employees by counsel. *Id.* Flyers were also circulated about the action by the involved Union for the Farm Fresh employees. *Id.* The result of the circulated consent forms and flyers was 125 consent forms for opt-in plaintiffs being obtained by the plaintiffs. *Id.* Only after the 125 consent forms were obtained did the *Schaffer* plaintiffs move for court approval of a notice process. *Id.*

The District Court in *Schaffer* not only denied the request for court approval, but also ordered "that neither the parties … nor anyone acting for them … conduct any further activity to attempt to recruit additional plaintiffs … until further order of the Court." *Id.* at 144-145. The District Court further found that some opt-in plaintiffs may have been misled before their consent forms were obtained. *Id.* at 145. The District Court eventually dismissed the plaintiffs' claims and struck the consent forms **without prejudice.** *Id.*

Upon appeal, the Fourth Circuit identified "no reason for continuing the district court's ban on communication between Schaffer and potential class members." *Id.* at 147. Moreover, the Fourth Circuit vacated the dismissal order of the opt-in plaintiffs and those 125 opt-in plaintiffs who had their consent forms dismissed were allowed to proceed with their claims. *Id.*

5

In both *Hoffman-La Roche* and *Shaffer*, motions were brought to have pre-notice consent forms struck or invalidated. *Hoffman-La Roche*, at 168, and *Shaffer*, at 144. In both cases the over 400 and 125, respectively, consent forms were allowed and attorney communication with potential opt-in plaintiffs was not restricted. Conversely, Hickory Tavern's Motion seems extreme and overreaching in its attempt to have ten consent forms struck and those ten opt-in plaintiffs denied joinder.

### HICKORY TAVERN'S BASELESS ACCUSATIONS OF MISLEADING COMMUNICATIONS AGAINST PLAINTIFFS

In their Motion to have ten consent forms struck, Hickory Tavern levels accusations that Plaintiffs have misled potential opt-in plaintiffs with "factual and legal conclusions" (Motion, pg. 8.), provided "inaccurate and misleading information" (Motion, pg. 10), and have "sent unauthorized and unsolicited notices … via direct unilateral communication" to current and former Hickory Tavern employees (Motion, pg. 3). Defendants make these bald accusations without any support. Nowhere in Defendants' Motion do they state, nor claim, nor offer any proof, that any factual or legal conclusions made by Plaintiffs have misled a single potential opt-in plaintiff. Nowhere in Defendants' Motion do they point to any inaccurate or misleading information that Plaintiffs provided to potential opt-in Plaintiffs. And nowhere in Defendants' Motion do they provide any evidence that Plaintiffs sent direct unilateral communications to any former or current employees of Hickory Tavern.

What Hickory Tavern directs the Court to review is that Plaintiffs' counsel uploaded a file stamped copy of the Complaint and Amended Complaint to its website,

6

provided a summary of the lawsuit, included a link to a Charlotte Observer article discussing the lawsuit, and included on its website a suggestion for Hickory Tavern employees to contact Plaintiffs' counsel with any questions about the lawsuit. Motion pg. 3. Hickory Tavern also directs the Court to review Plaintiffs' counsel's Twitter posts which merely provided links to counsel's website. *Id.*

Hickory Tavern's Motion then cites to various district court opinions with language such as "Plaintiffs shall not include such unqualified misleading statements in their communication with potential plaintiffs" (Motion, pg. 5), "communications cannot contain factual and legal conclusions that may mislead potential plaintiffs" (Motion, pg. 8), and a case that discusses "plaintiffs' counsel's misleading ads and website." *Id.* Despite all of Hickory Tavern's finger pointing to Plaintiffs' counsel's website and Twitter links, Hickory Tavern has not singled out a single one of the described horribles as being misleading of factually inaccurate. In fact, Plaintiff has done nothing more than provide a copy of a filed public court document with a factual summary of its contents.

Moreover, as this Court has recognized, "both plaintiff and the defendant in an FLSA action may communicate with unrepresented class members." *Solaris v. Vesuvio's II Pizza & Grill, Inc.*, 2016 WL 1057038 at *2 (W.D.N.C March 14, 2016). As this court held in *Solaris*, courts only restrict communications that are misleading, coercive, or otherwise abusive. *Id.* Simply put, Plaintiffs have committed none of those acts – and Defendants cannot provide any such examples. Although Plaintiffs' counsel has updated their website with summary information about the lawsuit, the information is neither misleading nor inaccurate. And certainly a law firm's website is not direct

7

communication with a potential opt-in plaintiff. In fact, as Defendants' point out, counsel's website only includes a summary of allegations that exist within a filed complaint – along with a file stamped copy of the Amended Complaint.

### PLAINTIFFS' ACTIONS AFTER THE FILING OF THE AMENDED COMPLAINT DO NOT RISE TO THE LEVEL OF REQUIRING ANY CONSENT FORMS TO BE STRICKEN

Hickory Tavern relies upon district court cases that are easily distinguishable from Plaintiffs' actions to argue for striking ten consent forms. First, Hickory Tavern cites to *Bouder v. Prudential Fin., Inc.*, 2007 WL 3396303 (D.N.J. Nov. 8, 2007) where plaintiffs' counsel was sending direct mail letters to potential opt-in plaintiffs. *Id.* at *2. In ordering plaintiffs' counsel to cease and desist in their direct mail efforts, the court found that the letters were improper because they were "deceptive, misleading and contain[ed] numerous false statements." *Id.* at *3. As has been addressed herein, Hickory Tavern has made no allegations of any such deceptive or misleading direct mail conduct by Plaintiffs – and Plaintiffs' counsel has sent no direct mail letters to any potential opt-in plaintiffs.

Hickory Tavern also relies upon *Chemi v. Champion Mortgage*, 2006 WL 7353427 (D.N.J. June 21, 2006) in which consent forms were struck after plaintiffs' counsel had set up a separate website specifically for the lawsuit that contained a proposed notice and opt-in consent forms. *Id.* at *9-10. Hickory Tavern has made no analogous argument that any case specific website was set up by Plaintiffs, or that a proposed notice or consent form were available for downloading on Plaintiffs' counsel's website. In fact, no such argument can be made because no such activity existed.

8

Interestingly, *Chemi* said this about the consent forms that were filed before any motion for conditional certification: "At the very least, plaintiffs' counsel should have waited to submit consents to opt-in, whether solicited directly or obtained indirectly, following the Court's determination of the motion to conditionally certify the class for purposes of notice." *Id.* The holding in *Chemi* indicates that the only harm herein was Plaintiffs submitting the ten consent forms before the Court rules on conditional certification in this action. Considering the lack of any misleading, deceptive or false statements, the striking of ten consent forms seems to be extreme recourse.

Another case upon which Hickory Tavern relies is *Melendez v. Hershey Puerto Rico, Inc.*, 363 F.Supp.2d 10 (2005), which struck consent forms of opt-in plaintiffs after plaintiffs' counsel provided specific notice to potential class members. *Id.*, 363 F.Supp2d at 13. *Melendez* also refused to grant conditional certification to authorize any opt-in plaintiffs even under the "lenient review of Plaintiffs' allegations." *Id.*, 363 F.Supp.2d at 18. Again, Hickory Tavern has provided no proof, nor allegations that Plaintiffs' counsel herein sent any direct notice to a single potential opt-in plaintiff. And again, Hickory Tavern cannot provide any such proof because no such direct notice was ever sent. In fact, no case cited by Defendants support the striking of any consent forms based on Plaintiffs' conduct herein.

While Plaintiffs are confident that conditional certification will be granted in this matter, striking ten opt-in consent forms at such an early stage so adversely effects their statute of limitations as to be a drastic result. As has been shown herein, Hickory Tavern's Motion fails to identify any misleading statements – and certainly nothing

9

points to Plaintiffs' counsel providing consent forms or any direct notice to any opt-in plaintiff.

As was held in *Threatt v. Residential CRF, Inc.*, 2005 WL 2454164 (N.D. Ind. Oct. 4, 2005) a motion to strike was denied when filed consent forms were the result of potential plaintiffs directly contacting Plaintiffs' counsel. *Id.*, at *2. *Threatt* further observed that there was no evidence that plaintiffs' counsel therein had embarked on any e-mail solicitation effort, or telephone call campaign to directly notify potential plaintiffs – and *Threatt* found that it was "hard pressed to strike the filed consent forms, considering the broad language of the FLSA addressing consents of opt-in plaintiffs." *Id.* at *3., citing *Hoffman-La Roche*, 493 U.S. at 169, 181 (declining to disturb district court's denial of defendant's request to invalidate consents that were obtained and filed without court approval). Moreover, *Threatt* was concerned with an equitable tolling dilemma with respect to the statute of limitations if consent forms were stuck "because the action is not commenced with respect to an opt-in plaintiff until his or her consent is filed." *Id.* *Threatt* therefore declined the employer's motion to strike the filed consent forms after "considering that no written notices were distributed … and that striking the consent forms could bar certain opt-in plaintiffs' claims from a statute of limitations perspective." *Id.*

For the same reasons and concerns addressed in *Threatt*, Plaintiffs request that Hickory Tavern's Motion be denied.

Plaintiffs do however, recognize the concerns Defendants raise in their Motion related to misleading direct statements to potential opt-in plaintiffs. Here, no such

10

statements exist. Plaintiffs also recognize Defendants' concerns about Plaintiffs' counsel's website requesting potential opt-in plaintiffs to contact Plaintiffs' counsel. Again, Plaintiffs' counsel deny that any conduct rises to the level requiring any consent forms to be struck.

However, to address Defendants concerns, all language on counsel's website asking current or former employees of Hickory Tavern to contact Plaintiffs' counsel have been removed and deleted. In the event that the Court is inclined to grant Defendants' Motion striking the ten opt-in plaintiffs' Consent Forms and denying their joinder into this action, Plaintiffs request that any such Order be without prejudice to their ability to rejoin the action should conditional certification be granted.

Respectfully submitted this 6th day of October, 2016.

| | |
|---|---|
| /s/ James A. Roberts, III | /s/ Paul R. Dickinson, Jr. |
| James A. Roberts, III | Paul R. Dickinson, Jr. |
| N.C. Bar Number: 10495 | N.C. Bar Number: 20510 |
| Lewis & Roberts, PLLC | Lewis & Roberts, PLLC |
| 3700 Glenwood Avenue, Suite 410 (27612) | One Southpark Center |
| P. O. Box 17529 | 6060 Piedmont Row Drive South, Suite 140 |
| Raleigh, North Carolina 27619-7529 | Charlotte, North Carolina 28287 |
| Telephone: (919) 981-0191 | Telephone: (704) 347-8990 |
| Facsimile: (919) 981-0199 | Facsimile: (704) 347-8929 |
| E-mail: jar@lewis-roberts.com | E-mail: prd@lewis-roberts.com |

*Attorneys for Plaintiffs*

# CERTIFICATE OF SERVICE

I hereby certify that on October 6, 2016, a copy of the foregoing **Plaintiffs' Memorandum in Opposition to Defendants' Motion to Strike Plaintiffs' Consent Forms** was filed electronically with the ECF filing system for the U.S. District Court for the Middle District of North Carolina. Notice of this filing will be sent to the following parties by operation of the Court's ECF system.

**Debbie Whittle Durban**
**NC Bar No. 39115**
**E-Mail: debbie.durban@nelsonmullins.com**
**Bank of America Corporate Center, 42nd Floor**
**100 North Tryon Street**
**Charlotte, NC**
**(803) 799-2000**

**William H. Foster**
**Federal Bar No. 6221**
**E-Mail: bill.foster@nelsonmullins.com**
**104 South Main Street, Ninth Floor**
**Greenville, SC 29601**
**Post Office Box 10084 (29603-0084)**

*Attorneys for Hickory Tavern*

/s/ Paul R. Dickinson, Jr.
Paul R. Dickinson, Jr.
N.C. Bar Number: 20510
LEWIS & ROBERTS, PLLC
One Southpark Center
6060 Piedmont Row Drive South, Suite 140
Charlotte, North Carolina 28287
Telephone: (704) 347-8990
Facsimile: (704) 347-8929
E-mail: prd@lewis-roberts.com
*Attorneys for Plaintiffs*