IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

VANESSA CHAVEZ, AMY BERLAK,       )
BROOKE GRAHAM, and MELISSA         )
VARNER, on behalf of               )
themselves and all others          )
similarly situated,                )
                                   )
                Plaintiffs,        )
                                   )
        v.                         )        1:16cv1019
                                   )
T&B MANAGEMENT, LLC, and T&B       )
CONCEPTS OF HICKORY, LLC, each     )
d/b/a HICKORY TAVERN,              )
                                   )
                Defendants.        )

## MEMORANDUM OPINION AND ORDER

THOMAS D. SCHROEDER, District Judge.

This dispute involves a putative collective action by servers and bartenders of Defendants (also collectively, "Hickory Tavern") who operate various restaurants. Plaintiffs allege that Defendants have violated the tip-credit provisions of the Fair Labor Standards Act ("FLSA" or the "Act"), 29 U.S.C. §§ 201 et seq., by requiring these employees to spend more than twenty percent of their workweek engaged in non-tippable activities. Before the court are Defendants' motion to dismiss the first amended complaint (Doc. 28) and motion to strike a number of consents by Plaintiffs to join the action on the ground they were solicited before Plaintiffs sought certification of the collective action under 29 U.S.C. § 216(b) (Doc. 22). Also, Plaintiffs have

moved to conditionally certify the action as a collective.  (Doc. 38.)  The court heard argument on the pending motions on April 17, 2017, and they are ripe for consideration.

For the reasons that follow, the court will grant Defendants' motion to dismiss the amended complaint, but Plaintiffs will be permitted thirty days within which to file an amended complaint to raise the dual occupation claim they contend they wish to pursue.

## I.    BACKGROUND

Viewed in the light most favorable to Plaintiffs, the allegations of the amended complaint show the following:

Defendants operate twenty-three casual dining restaurants under the name "Hickory Tavern" throughout North Carolina, South Carolina, Alabama, and Tennessee.  (Id. at 3, ¶ 9.)  Plaintiffs are former Hickory Tavern employees who allege that the restaurant chain engaged in a "systemic scheme of wage abuses" against its tipped server employees.  (Id. at 2-3, ¶¶ 1-6.)  Specifically, Plaintiffs contend that Hickory Tavern required its tipped server employees to spend more than twenty percent of their workweek performing related but non-tip-generating duties and tasks, which they term "sidework,"[1] for which they were paid below minimum wage,

---

[1] Plaintiffs divide their sidework into three categories:

"Pre-shift duties" include cutting and preparing garnishes; making tea; portioning sugar for tea; preparing condiment cups; rolling silverware into napkins; making coffee; stocking cups; filling ice bins; stocking straws; and distributing trash cans.  (Doc. 6 at 8, ¶ 33.)

in violation of the FLSA. Plaintiffs bring this action collectively on behalf of themselves and the class of similarly situated persons, defined as "[a]ll hourly tipped employees of Hickory Tavern who work, or worked, as servers [or bartenders[2]] at any of Defendants' Hickory Tavern restaurants from August 1, 2013 through the present, and who Defendants did not pay minimum wage when their non-tip generating work exceeded twenty percent (20%) of their workweek." (Id. at 5, ¶¶ 18, 19.)

In addition to sidework, the named Plaintiffs and proposed class members operate in "a team oriented system" known as "The Loop." (Id. at 9, ¶ 39.) The Loop divides an employee's daily routine into five steps, functioning in a continuous cycle: (1) greeting patrons, (2) serving them their first round, (3) providing them with food and drinks, (4) bussing tables, and (5) preparing silverware and performing general sidework. (Id. at 10, ¶ 40.) Once a server completes the fifth step, he or she begins the cycle

---

"Post-shift duties" include emptying trash; rolling silverware; sweeping floors; stocking condiment shelves; cleaning coolers; washing mats; cleaning shelves; filling condiment cups; cleaning tables; cleaning tea urns; cleaning coffee makers/pots; cleaning counters; cleaning stainless surfaces; taking inventory; cleaning wood surfaces; cleaning parking lots; and picking up cigarette butts from parking lots. (Id. at 8, ¶ 35.)

"Weekly tasks" include cleaning and replacing all salt shakers; cleaning and replacing all pepper shakers; cleaning and replacing all sugar caddies; pulling out booths to clean behind them; cleaning wood surfaces; cleaning out all storage areas; cleaning out all walk-in areas; cleaning soda gun nozzles; and cleaning ice bins. (Id. at 9, ¶ 37.)

[2] All named Plaintiffs bring this action on behalf of servers. (Id. at 5, ¶ 18.) In addition, Berlak and Varner bring this action on behalf of bartenders. (Id. at 5, ¶ 19.)

again with the first step. (<u>Id.</u> at 9-10, ¶¶ 40-47.) The Loop specifically instructs tipped employees to spend more than twenty percent of their time doing work that does not generate tips for themselves. (<u>Id.</u> at 10, ¶ 42.) Defendants also have a policy of not pooling tips among servers, meaning that a server who assists a fellow employee does not generate work for himself. (<u>Id.</u> at 6, ¶ 26.)

As tipped employees, Plaintiffs were paid an hourly rate of $2.13, below the Federal minimum wage of $7.25 per hour. Defendants supplemented Plaintiffs' hourly rate with a "tip credit," as authorized by the FLSA. <u>See</u> 29 U.S.C. § 203(m). Plaintiffs do not allege that they did not earn at least the minimum wage for their total hours worked, but they claim they spent more than twenty percent of their workweek completing sidework. (Doc. 6 at 11, ¶ 50.) According to Plaintiffs, when tipped employees perform sidework for more than twenty percent of their workweek, the FLSA requires that the employer record the sidework and page the employees minimum wage for it. (<u>Id.</u> at 7, ¶ 31.) Plaintiffs contend that Defendants' failure to properly record all time they engaged in sidework and to pay them minimum wage for it violates the FLSA, and Plaintiffs seek the wage difference - $5.12 per hour - for all sidework (not just that over twenty percent) performed by them and the collective members. (<u>Id.</u> at 11-12, ¶¶ 51, 53.)

In June 2016, Defendants modified their compensation practices, paying servers and bartenders $7.25 per hour to perform "pre-shift and post-shift duties." (Id. at 12, ¶¶ 55-56.)

Plaintiffs filed this action against Defendants on August 1, 2016, alleging one count under the FLSA. (Doc. 1 at 7-8, ¶¶ 34-44; Doc. 6 at 13-15, ¶¶ 64-76.) They seek unpaid wages, liquidated damages, attorney's fees, prejudgment interest, and the costs of this action. (Doc. 6 at 15.)

## II. ANALYSIS

### A. Standard of Review

The purpose of a Rule 12(b)(6) motion is to "test[] the sufficiency of a complaint" and not to "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992). In considering a Rule 12(b)(6) motion, a court "must accept as true all of the factual allegations contained in the complaint," Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam), and all reasonable inferences must be drawn in the plaintiff's favor, Ibarra v. United States, 120 F.3d 472, 474 (4th Cir. 1997). To be facially plausible, a claim must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable" and must demonstrate "more than a sheer possibility that a defendant has acted unlawfully." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atl. Corp.

v. Twombly, 550 U.S. 544, 556 (2007)).  While "the complaint, including all reasonable inferences therefrom, [is] liberally construed in the plaintiff's favor," this "does not mean that the court can ignore a clear failure in the pleadings to allege any facts [that] set forth a claim." Estate of Williams-Moore v. All. One Receivables Mgmt., Inc., 335 F. Supp. 2d 636, 646 (M.D.N.C. 2004) (citing McNair v. Lend Lease Trucks, Inc., 95 F.3d 325, 327 (4th Cir. 1996)).  Mere legal conclusions are not accepted as true, and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678

### B.   The Statute, Regulation, and Interpretive Guidance

Plaintiffs allege that the non-tip generating work (sidework and The Loop tasks) they were required to perform violated the FLSA because in the aggregate it habitually and regularly exceeded twenty percent of their workweek. (Doc. 6, ¶¶ 47-51.)  Plaintiffs rely principally on the U.S. Department of Labor ("DOL") regulations, related agency opinion letters, a handbook, and a "fact sheet."  Defendants contend that Plaintiffs' asserted twenty percent rule is not founded on the FLSA but rather is based on statements found only in agency documents that are not entitled to deference.  (Doc. 29 at 15-18.)

As with any question of statutory authority, the court begins with the FLSA's text, which reads in relevant part:

In determining the wage an employer is required to pay a tipped employee, the amount paid such employee by the employee's employer shall be an amount equal to –

> (1) the cash wage paid such employee which for purposes of such determination shall be not less than the cash wage required to be paid such an employee on August 20, 1996; and

> (2) an additional amount on account of the tips received by such employee which amount is equal to the difference between the wage specified in paragraph (1) and the wage in effect under section 206(a)(1) of this title.

The additional amount on account of tips may not exceed the value of the tips actually received by an employee.

29 U.S.C. § 203(m). The FLSA defines "tipped employee" to mean "any employee engaged in an occupation in which he customarily and regularly receives more than $30 a month in tips." Id. § 203(t).

In interpreting the phrase "more than $30 a month in tips," the DOL has issued the following regulation:

> (e) Dual jobs. In some situations an employee is employed in a dual job, as for example, where a maintenance man in a hotel also serves as a waiter. In such a situation the employee, if he customarily and regularly receives at least $30 a month in tips for his work as a waiter, is a tipped employee only with respect to his employment as a waiter. He is employed in two occupations, and no tip credit can be taken for his hours of employment in his occupation of maintenance man. Such a situation is distinguishable from that of a waitress who spends part of her time cleaning and setting tables, toasting bread, making coffee and occasionally washing dishes or glasses. It is likewise distinguishable from the counterman who also prepares his own short orders or who, as part of a group of countermen, takes a turn as a short order cook for the group. Such related duties in an occupation that is a tipped occupation need not by themselves be directed toward producing tips.

29 C.F.R. § 531.56(e).

Since promulgating § 531.56(e), the DOL has issued four opinion letters interpreting the regulation. The DOL's Wage and Hour Division has also maintained a resource called the "Field Operations Handbook" ("FOH" or "handbook") and issued "Fact Sheet #15," which discuss the dual-occupation rule.

The first opinion letter was issued on March 28, 1980. In that letter, the DOL wrote that after-hours cleanup duties such as cleaning a salad bar, placing condiment crocks in a cooler, cleaning and stocking a waitress station, cleaning and resetting tables, and vacuuming "constitute tipped employment within the meaning of the regulation," noting that the DOL "might have a different opinion if the facts indicated that specific employees were routinely assigned, for example, maintenance-type work such as floor vacuuming." (Doc. 29-1 at 3.)

In its second opinion letter, issued on December 20, 1985, the DOL wrote that the tip credit did not apply when a single waiter was made to prepare a restaurant to open for 1.5 to 2 hours of a 5-hour shift. (Doc. 29-2 at 4.)[3] The letter noted that

---

[3] The preparatory activities included: inspecting dining room windows, sills, and lights; setting the thermostat; checking and setting tables; cleaning and filling shakers and ashtrays; stocking the waitress station with glasses, cups, etc.; checking napkins, straws, etc. and their cleanliness; set up glass-washing sink; preparing tea and coffee and checking beverage dispensers; cut and clean vegetables for salad bar, clean sneeze shield, and fill crocks with refrigerated and dry items; placing vinegar, parmesan, and oil cruets on salad bar. (Id. at 3.)

"where the facts indicate that . . . tipped employees spend a substantial amount of time performing general preparation work or maintenance, we would not approve a tip credit for hours spent in such activities."  The letter further noted that "only one waiter or waitress [was] assigned to perform all preparatory activities" and that the staff's responsibilities "extend to the entire restaurant rather than to the specific area or customers . . . they serve." (Id.)  Finding that the 1.5 to 2 hours of preparatory time constituted "30% to 40% of the employee's workday," the DOL concluded that "no tip credit may be taken for the hours spent by an assigned waiter or waitress in opening responsibilities." (Id.)

The DOL describes the FOH as "an operations manual that provides Wage and Hour Division (WHD) investigators and staff with interpretations of statutory provisions, procedures for conducting investigations, and general administrative guidance."  Field Operations Handbook, U.S. Dep't of Labor, https://www.dol.gov/whd/FOH/ (last visited May 24, 2017).  The DOL further states that the "FOH reflects policies established through changes in legislation, regulations, significant court decisions, and the decisions and opinions of the WHD Administrator."  However, the DOL then cautions that the FOH "is not used as a device for establishing interpretative policy."  Id.  The FOH was initially maintained solely within the DOL and was published to fulfill the

DOL's obligations under the Freedom of Information Act and "to provide public access to information regarding DOL programs." Id.[4]

In 1988, the DOL amended the FOH to provide the following about § 531.56(e):

> Reg. 531.56(e) permits the taking of the tip credit for time spent in duties related to the tipped occupation, even though such duties are not by themselves directed toward producing tips (i.e. maintenance and preparatory or closing activities). For example a waiter/waitress, who spends some time cleaning and setting tables, making coffee, and occasionally washing dishes or glasses may continue to be engaged in a tipped occupation even though these duties are not tip producing, provided such duties are incidental to the regular duties of the server (waiter/waitress) and are generally assigned to the servers. However, where the facts indicate that specific employees are routinely assigned to maintenance, or that tipped employees spend a substantial amount of time (in excess of 20 percent) performing general preparation work or maintenance, no tip credit may be taken for the time spent in such duties.

---

[4] The DOL explains:

> The Department of Labor (DOL) is publishing this FOH on the Internet pursuant to its obligation under FOIA to make available administrative staff manuals and instructions to staff that affect members of the public, 5 U.S.C. 552(a)(2), and as a public service to provide public access to information regarding DOL programs. It is important to note that there will often be a delay between the publication of changes in legislation, regulations, significant court decisions, and the decisions or opinions of the WHD Administrator and the modification of these pages. Therefore, these pages may not reflect current legislation, regulations, significant court decisions, and decisions and opinions of the WHD Administrator and no express or implied guarantees are indicated. The Federal Register and the Code of Federal Regulations (CFR) remain the official resources for regulatory information published by the DOL. Any errors in the FOH should be brought to the attention of the WHD.

Id.

(Doc. 29-3 at 2.)[5]

On January 15, 2009, over twenty years after it amended the FOH, the DOL issued a third opinion letter, writing that a "barback," a bartender's assistant "who learns the profession of bartending under the tutelage of a bartender and whose primary job duty is to support the bartender," is a tipped employee. (Doc. 29-5 at 3.) The barbacks at issue received their tips from tip pools with the bartenders they supported. (Id.)

On January 16, 2009, the DOL Acting Wage and Hour Act Administrator signed a fourth opinion letter, explaining that FOH § 30d00(e) should not be construed to "limit[] . . . the amount of duties related to a tip-producing occupation that may be performed, so long as they are performed contemporaneously with direct customer-service duties." (Doc. 29-4 at 4.) The letter stated that "[t]hese principles supersede our statements in FOH § 30d00(e)" and that "[a] revised FOH statement will be forthcoming." (Id. at 5.) The letter cites two cases: Fast v.

---

[5] The current copy of the FOH states that

> where the facts indicate that tipped employees spend a substantial amount of time (i.e., in excess of 20 percent of the hours worked in the tipped occupation in the workweek) performing such related duties, no tip credit may be taken for the time spent in those duties. All related duties count toward the 20 percent tolerance.

Chapter 30: Records, Minimum Wage, and Payment of Wages, U.S. DEP'T OF LABOR, at 31, § 30d00(f)(3), https://www.dol.gov/whd/FOH/FOH_Ch30.pdf (last visited May 24, 2017).

*Applebee's Int'l, Inc.*, 502 F. Supp. 996 (W.D. Mo. 2007), order vacated in part, No. 06-04146-CV-C-NKL, 2009 WL 4344562 (W.D. Mo. Aug. 26, 2009), and supplemented, No. 06-4146-CV-C-NKL, 2010 WL 816639 (W.D. Mo. Mar. 4, 2010), aff'd, 638 F.3d 872 (8th Cir. 2011); and *Pellon v. Bus. Representation Int'l, Inc.*, 528 F. Supp. 2d 1306, 1310 (S.D. Fla. 2007), aff'd, 291 F. App'x 310 (11th Cir. 2008). Fast accepted § 30d00(e)'s twenty percent rule, and Pellon rejected it. The letter addressed the two cases, stating:

> The [Pellon] court further held that under the Fast ruling, "nearly every person employed in a tipped occupation could claim a cause of action against his employer if the employer did not keep [the employee under] perpetual surveillance or require them to maintain precise time logs accounting for every minute of their shifts." Such a situation benefits neither employees nor employer.

(Doc. 29-4 at 4 (quoting Pellon, 528 F. Supp. 2d at 1314).)[6] This letter was apparently never mailed to the party requesting it (perhaps because it was executed at the end of one administration's term), and the DOL formally withdrew the letter on March 2, 2009. (Id. at 3.)

Finally, in support of its position, Plaintiffs' amended complaint cites DOL "Fact Sheet #15" that "provides general information concerning the application of the FLSA to employees who receive tips." (Doc. 6-5 at 1.) The fact sheet advises that

---

[6] The language in the second set of brackets appears in Pellon but is omitted without comment in the letter.

it "is for general information and is not to be considered in the same light as official statements of position contained in the regulations." (Id. at 5.) The publication reproduces much of the language in § 30d00(f)(3), and Plaintiffs rely on the highlighted language:

> Dual Jobs: When an employee is employed by one employer in both a tipped and a non-tipped occupation, such as an employee employed both as a maintenance person and a waitperson, the tip credit is available only for the hours spent by the employee in the tipped occupation. The FLSA permits an employer to take the tip credit for some time that the tipped employee spends in duties related to the tipped occupation, even though such duties are not by themselves directed toward producing tips. For example, a waitperson who spends some time cleaning and setting tables, making coffee, and occasionally washing dishes or glasses is considered to be engaged in a tipped occupation even though these duties are not tip producing. *However, where a tipped employee spends a substantial amount of time (in excess of 20 percent in the workweek) performing related duties, no tip credit may be taken for the time spent in such duties.*

(Id. at 3 (emphasis added).)[7]

**C.   The Twenty Percent Standard**

The DOL is charged with enforcing the FLSA, Gonzales v. Oregon, 546 U.S. 243, 256 (2006), and under appropriate circumstances its regulations are entitled to Chevron deference. See Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc., 467

---

[7] The fact sheet Plaintiffs cite was last updated in 2013, but the most current copy contains identical language. See Fact Sheet #15, U.S. DEP'T OF LABOR, at 2, https://www.dol.gov/whd/regs/compliance/whdfs15.pdf (last visited May 24, 2017).

U.S. 837, 844 (1984).  Neither party disputes that § 531.56(e) is entitled to Chevron deference.[8]

The parties do contest, however, whether the two materials in which the DOL has mentioned the twenty percent standard – the FOH and Fact Sheet #15 on tipped employees – are entitled to deference under Auer v. Robbins, which provides that an agency's interpretations of ambiguous terms in its own regulations are controlling "unless plainly erroneous or inconsistent with the regulation."  519 U.S. 452, 461 (1997); see also Christensen v. Harris Cty., 529 U.S. 576, 588 (2000).  Plaintiffs contend that the FOH and Fact Sheet #15 clarify ambiguous terms of § 531.56(e) (including the phrases "part of her time" and "occasionally") and are entitled to such deference; Defendants contend they are not entitled to deference.

In order to be entitled to deference, the FOH and Fact Sheet #15 must constitute interpretive guidance subject to Auer.  In other words, the DOL must have intended for the two documents to

_____

[8] The Fourth Circuit has routinely adhered to the "workweek rule," which provides that there can be no FLSA minimum wage violation if the employee's total pay for a workweek divided by the total hours worked yields an hourly rate above the minimum wage.  See Blankenship v. Thurston Motor Lines, Inc., 415 F.2d 1193, 1198 (4th Cir. 1969); see also Monahan v. Cty. of Chesterfield, Va., 95 F.3d 1263, 1282 (4th Cir. 1996) (applying the workweek rule in another FLSA context); Kirchgessner, 174 F. Supp. 3d at 1125 (applying the workweek rule to the FOH's twenty percent standard).  Here, Plaintiffs fail to allege that their average rate of pay in any given workweek fell or falls below the federal minimum wage.  But because the parties do not contest whether § 513.56(e) is a valid interpretation of the FLSA, this court accepts, without deciding, that § 531.56(e) is consistent with the workweek rule.

14

represent its official interpretation of § 513.56(e). As noted above, the DOL states that the FOH "is not used as a device for establishing interpretative policy." Similarly, Fact Sheet #15 states that it "is for general information and is not to be considered in the same light as official statements of position contained in the regulations." Fact Sheet #15, U.S. DEP'T OF LABOR, at 4, https://www.dol.gov/whd/regs/compliance/whdfs15.pdf (last visited May 24, 2017). These would be strange caveats to add to documents intended to be interpretative guidance. Because the agency eschews such interpretative intent in these two documents, the court finds that the FOH and Fact Sheet #15 are not the DOL's official interpretive guidance on the matter and are not entitled to Auer deference. See Probert v. Family Centered Servs. of Alaska, Inc., 651 F.3d 1007, 1012 (9th Cir. 2011) (holding that the FOH is not "a proper source of interpretive guidance" and citing the FOH's own language that "[i]t is not used as a device for establishing interpretative policy" (citing Christensen, 529 U.S. at 587)); Kirchgessner v. CHLN, Inc., 174 F. Supp. 3d 1121, 1128 (D. Ariz. 2016) (applying Probert to the FOH's language on the twenty percent rule and concluding that it is not entitled to Auer deference); cf. Shaliehsabou v. Hebrew Home of Greater Wash., Inc., 369 F.3d 797, 802 n.5 (4th Cir. 2004) (Luttig, J., dissenting from the denial of rehearing en banc) (opining that the FOH is not entitled to Chevron deference and noting the FOH's disclaimer that

it is not to be used as interpretive guidance).

Only one court has expressly taken note of the FOH's disclaiming language and deferred to the twenty percent rule nevertheless. See Irvine v. Destination Wild Dunes Mgmt., Inc., 106 F. Supp. 3d 729, 732 (D.S.C. 2015). In that case, the defendant argued only that the FOH was not entitled to deference because it was not adopted through notice-and-comment rulemaking. Id. at 733. The court correctly rejected this argument, as a document need not undergo notice-and-comment rulemaking to be afforded Auer deference — that rule applies only to Chevron deference. See Christensen, 529 U.S. at 587 ("Here, however, we confront an interpretation contained in an opinion letter, not one arrived at after, for example, a formal adjudication or notice-and-comment rulemaking. Interpretations such as those in opinion letters — like interpretations contained in policy statements, agency manuals, and enforcement guidelines, all of which lack the force of law — do not warrant Chevron-style deference."). In this case, Defendants do not argue that the FOH or Fact Sheet #15 is invalid because of the lack of notice-and-comment rulemaking; rather, the contention is that the DOL disclaims the twenty percent rule as its own interpretation of § 531.56(e). (E.g., Doc. 29 at 8-9.) Furthermore, Irvine allowed the plaintiffs' claims to move forward in part because they alleged a violation of the dual occupation rule apart from a violation of the twenty percent rule. 106 F.

Supp. 3d at 735. Here, as discussed further below, the amended complaint alleges only a violation of the twenty percent rule.

Even assuming that the FOH and fact sheet are proper interpretive guidance, the Supreme Court has cautioned that Auer deference "is . . . unwarranted when there is reason to suspect that the agency's interpretation 'does not reflect the agency's fair and considered judgment on the matter in question.'" Christopher v. SmithKline Beecham Corp., 132 S. Ct. 2156, 2166 (2012) (quoting Auer, 519 U.S. at 462) (citing Chase Bank USA, N.A. v. McCoy, 562 U.S. 195, 209 (2011)). "This might occur when the agency's interpretation conflicts with a prior interpretation . . . ." Id. (citing Thomas Jefferson Univ. v. Shalala, 512 U.S. 504, 515 (1994); see also G.G. ex rel. Grimm v. Gloucester Cty. Sch. Bd., 822 F.3d 709, 719 (4th Cir. 2016), vacated and remanded on other grounds, No. 16-273, 2017 WL 855755 (U.S. Mar. 6, 2017). Indeed, "an agency's interpretation of a statute or regulation that conflicts with a prior interpretation is entitled to considerably less deference than a consistently held agency view." Miller v. AT & T Corp., 250 F.3d 820, 832 (4th Cir. 2001) (quoting Shalala, 512 U.S. at 515).

Here, the FOH and Fact Sheet #15 contain statements that are inconsistent with the DOL's letter of January 16, 2009, which acknowledges that "the FOH sections addressing the tip credit have resulted in some confusion and inconsistent application" (Doc. 29-

4 at 3) and favorably quotes a judicial opinion rejecting the twenty percent rule (id. at 4 (quoting Pellon, 528 F. Supp. 2d at 1310)). The letter expressly "supersede[s] [the DOL's] statements in FOH § 30d00(e)" (id. at 5), stating that "[n]o limitation shall be placed on the amount of [certain tasks listed on the website of the Occupation Information Network] that may be performed . . . as long as they are performed contemporaneously with the duties involving direct service to customers or for a reasonable time immediately before or after performing such direct-service duties" (id. at 4). Although the letter does not refer to Fact Sheet #15, the two documents are inconsistent insofar as Fact Sheet #15 relies on the twenty percent standard.

The DOL withdrew the January 16, 2009 letter in March of 2009, simultaneously with its issuance. (Id. at 3.) But the letter's express conflict with the FOH and Fact Sheet #15 reflects the agency's inconsistent thought, leading the court to doubt that the twenty percent rule articulated therein reflects the DOL's considered judgment. The DOL's opinion letters in the 1980s allowed employers to apply the tip-credit to an employee performing related tasks, unless the employee worked dual jobs or engaged in "a substantial amount of time in performing preparation work" for the entire restaurant prior to opening or maintenance. (See Doc. 29-1; Doc. 29-2.) The DOL later introduced the twenty percent rule in an internal handbook subsequently made available to the

public under the Freedom of Information Act.  In the January 16, 2009 opinion letter, the DOL conceded that its interpretations had created confusion.  It denounced any limitation on related tasks performed for a substantial time before or after direct service of customers, superseding the FOH.  But the DOL retracted that letter simultaneously with its publication.  These varying interpretations have created confusion and inconsistency among the courts.[9]  Thus, the agency's interpretations do not reflect the

---

[9] Under the twenty percent rule, employers would be required to keep records of how, precisely, their employees' time is spent throughout the day and whether their particular tasks fall within the category of tippable work.  Plaintiffs make such a claim here, alleging that the twenty percent rule obliges employers to record all such related work by employees throughout the day so it can be apportioned and paid at minimum wage.  That would appear to be a natural consequence of the twenty percent rule for contemporaneously performed work.  (E.g., Doc. 6 at 12, ¶ 58.)  Title 29, U.S. Code, § 211(c) requires employers to "make, keep, and preserve . . . records of the persons employed by him and of the wages, hours, and other conditions and practices of employment maintained by him, and [to] preserve such records for such periods of time, and [to] make such reports therefrom to the Administrator as he shall prescribe by regulation or order as necessary or appropriate for the enforcement of the provisions of this chapter or the regulations or orders thereunder."  But § 211(c) is ordinarily thought to command employers to track hours and wages to ensure compliance with the FLSA's requirement that employees be paid minimum wage and overtime for more than 40 hours of work.  At least two courts have noted the obvious impracticality of requiring employers to track their employees' activities on a granular level throughout the day.  See Pellon, 528 F. Supp. 2d at 1313–14 (stating that, "Permitting Plaintiffs to scrutinize every day minute by minute, attempt to differentiate what qualifies as tipped activity and what does not, and adjust their wage accordingly would create an exception that would threaten to swallow every rule governing (and allowing) for tip credit for employers," and noting such a rule would be "infeasible"); Crate v. Q's Rest. Grp. LLC, No. 813CV2549T24EAJ, 2014 WL 10556347, at *4 (M.D. Fla. May 2, 2014) (quoting Pellon, 528 F. Supp. 2d at 1313–14, and finding such an application to be "infeasible").  Nothing in the DOL's other opinion letters is consistent with imposing such a detailed recording requirement for contemporaneously performed work as a tipped employee.

agency's fair and considered judgment, making <u>Auer</u> deference inappropriate. <u>Christopher</u>, 132 S. Ct. at 2166.

Plaintiffs have cited cases in which courts have held the opposite, siding with employees seeking relief under the twenty percent rule. None of them is controlling, however, as the Fourth Circuit has not addressed the twenty percent rule or whether the FOH or the DOL's fact sheets are entitled to <u>Auer</u> deference. Further, in recognizing the twenty percent rule for non-tippable work performed contemporaneously with tippable work, all but one of these opinions simply ignored the FOH's cautionary language that "[i]t is not used as a device for establishing interpretative policy." Many cases similarly omitted any analysis of the DOL opinion letters discussed above. <u>See e.g.</u>, <u>Cope v. Let's Eat Out, Inc.</u>, No. 6:16-CV-03050-SRB, 2016 WL 3466140, at *5 (W.D. Mo. June 21, 2016) (relying on the FOH, without addressing the FOH's cautionary language or the opinion letters, to deny defendant's motion for judgment on the pleadings); <u>Volz v. Tricorp Mgmt. Co.</u>, No. 15-CV-0627-DRH-PMF, 2016 WL 146693, at *3 (S.D. Ill. Jan. 13, 2016) (relying on the Seventh Circuit's decision in <u>Driver</u> and the FOH, without citing its cautionary language or any DOL opinion letter, to validate the twenty percent rule); <u>Flood v. Carlson Restaurants Inc.</u>, 94 F. Supp. 3d 572, 575 (S.D.N.Y. 2015) (relying on the FOH to deny defendant's motion to dismiss without acknowledging the FOH's cautionary language or any DOL opinion

letter); <u>Hart v. Crab Addison, Inc.</u>, No. 13-CV-6458 CJS, 2014 WL 5465480, at *1 (W.D.N.Y. Oct. 28, 2014) (same); <u>Crate v. Q's Rest. Grp. LLC</u>, No. 813CV2549T24EAJ, 2014 WL 10556347, at *5 (M.D. Fla. May 2, 2014) (citing the FOH – but not its cautionary language or any DOL opinion letter – and denying defendant's motion to dismiss in part); <u>Driver v. AppleIllinois, LLC</u>, 890 F. Supp. 2d 1008, 1029 (N.D. Ill. 2012) (relying on the FOH and <u>Fast</u> to grant plaintiff's motion for summary judgment, without addressing the FOH's cautionary language or any DOL opinion letter).

Plaintiffs cite only a handful of cases in which courts addressed the DOL's twenty percent rule in its FOH, Fact Sheet #15, or the now-withdrawn January 16, 2009 opinion letter. Even these cases ignored the FOH's disclaimer. <u>Fast</u>, 638 F.3d at 879 (deferring to the FOH under <u>Auer</u> after finding § 531.56(e) ambiguous); <u>McLamb v. High 5 Hosp.</u>, 197 F. Supp. 3d 656, 663 (D. Del. 2016) (recognizing the twenty percent rule on the bases that (1) the cases that did not adopt the rule "appear to be outliers," (2) the opinion letters are not "proof that the substantial work interpretation has been inconsistently applied since its creation in 1988," and (3) "behavior by the DOL prior to the sub-regulation's existence has no bearing on its weight post-creation"); <u>Langlands v. JK & T Wings, Inc.</u>, No. 15-13551, 2016 WL 2733092, at *2 (E.D. Mich. May 11, 2016) (denying defendant's motion to dismiss, citing the FOH, and noting that the DOL opinion

letters are not persuasive in light of the FOH because "[c]ourts regularly follow the DOL's interpretation of its own regulations" and "[t]he fact that the [January 16, 2009 opinion letter] was withdrawn is not a reason to ignore its prior interpretations"). Indeed, in one case referenced by Plaintiffs, Schamis v. Josef's Table, LLC, the court denied a motion to dismiss without addressing the issue of Auer deference at all, omitting any analysis of the FOH or the DOL opinion letters. No. 12-80638-CIV, 2014 WL 1463494, at *4-5 (S.D. Fla. Apr. 15, 2014); cf. Schaefer v. Walker Bros. Enterprises, 829 F.3d 551 (7th Cir. 2016) (where the employer treated the FOH as entitled to Auer deference, applying the twenty percent rule but granting employer summary judgment). Instead, the court explained that it would need a factual record to make such a determination. Id. Because these opinions fail to address the FOH's disclaimer and in some instances even the DOL's opinion letters, they are less than complete in their analysis and therefore less persuasive.[10]

---

[10] There are reasons the court should tread carefully in ensuring that a statement urged by a plaintiff was intended to constitute interpretative guidance, for to do otherwise may disserve the agency. For example, wrongfully according an agency's statement as interpretative guidance could create an unnecessary conflict if the agency subsequently chooses to issue an opinion letter that contradicts the agency's prior statement (as the DOL did for tipped employees in 2009). See Thomas Jefferson University, 512 U.S. at 515 (denying Auer deference to agency interpretation that conflicts with prior interpretation); see also Christopher, 132 S. Ct. at 2166 (citing id. for the same proposition). The DOL should be free to provide its employees rules of thumb and unofficial interpretations of the FLSA without binding itself to those

22

Of course, the fact that the FOH and fact sheet are not official interpretive guidance does not mean that Plaintiffs cannot bring a claim under § 531.56(e). The DOL's opinion letters provide that employers are liable for paying minimum wage to dual occupation employees whose duties are (a) not only non-tippable but underlined unrelated to the tippable occupation (e.g., a waitress taking time from the middle of her shift to drive a delivery van) or (b) non-tippable, related to the tippable occupation, and take place before or after tippable duties for "a substantial amount of time."

Consequently, the court finds that Plaintiffs' FLSA claim, as presently articulated, fails to state a claim upon which relief can be granted insofar as it is founded on the contention that all non-tippable work, including related but non-tippable duties performed contemporaneous with Plaintiffs' shifts, violates the FLSA because in the aggregate it exceeds twenty percent of Plaintiffs' workweek. Thus, Defendants' motion to dismiss will be granted, subject to the limitations to follow.

### D.   Dual Occupation Claim

Plaintiffs' inclusion of contemporaneous and related non-tippable work in their claims does not necessarily doom them.

---

interpretations in court, especially when the agency explicitly disclaims an intent to accord those rules any official interpretive guidance. That conclusion should not be altered by the fact that the DOL was made to publish that guidance through a FOIA request.

Section 531.56(e) provides that under certain circumstances an employee tasked with performing a "dual job" or "occupation" may not be eligible for treatment as a tipped employee as to the other occupation. The question under § 531.56(e) (and therefore under the FLSA) is the extent to which the employee engages in tasks outside his or her "occupation." See generally, e.g., Schaefer, 829 F.3d 551 (applying the dual occupation standard to a tip-credit claim). The regulation acknowledges that certain "related duties in an occupation that is a tipped occupation need not by themselves be directed toward producing tips."

The DOL's first two opinion letters on the matter indicate that § 531.56(e)'s dual occupation provision is violated when tipped employees spend a substantial amount of time performing non-tippable work before and after periods of tippable work. In the first letter, issued March 28, 1980, the question raised was whether "certain duties performed by tipped employees in a restaurant after closing hours are considered to be tipped employee duties" under the FLSA. (Doc. 29-1 at 2.) The DOL wrote that no tip credit may be taken "where there is a clear dividing line between the types of duties performed by a tipped employee." (Id. at 3.) It concluded that various after-hours cleanup duties "constitute tipped employment within the meaning of the regulation" but noted that the DOL "might have a different opinion if the facts indicated that specific employees were routinely

24

assigned, for example, maintenance-type work such as floor vacuuming." (Id.)

The second letter, issued December 20, 1985, inquired "whether salad bar and dining room set-up are duties related to a tipped occupation." (Doc. 29-2 at 2.) The DOL opined that "tip credit could be taken for non-salad bar preparatory work or after-hours clean-up if such duties are incidental to the waiter[s'] or waitress[es's] regular duties and are assigned generally to the waiter/waitress staff." (Id. at 4.) But, the DOL noted, "where the facts indicate that . . . tipped employees spend a substantial amount of time performing general preparation work or maintenance, we would not approve a tip credit for hours spent in such activities." (Id.) Thus, the DOL opined, no tip credit may be taken as to a single waiter who spent thirty to forty percent of her shift preparing a restaurant to open. (Id.) At least one court reached this result. Crate, 2014 WL 10556347, at *4 (permitting claim to proceed under § 531.56(e) if evidence showed that waiters performed non-tipped functions during "discrete time periods[,] such as before the restaurant opens to customers, after the restaurant is closed to customers, or between the lunch and dinner shifts").

These opinion letters are entitled to Auer deference. No party contends otherwise. Defendants' argument that the DOL's "ever-changing" posture precludes Auer deference relates to the

FOH and Fact Sheet #15, not these letters. (Doc. 29 at 20.) Moreover, nothing in the withdrawn January 16, 2009 opinion letter conflicts with these opinion letters. The withdrawn letter stated that "[w]e do not intend to place a limitation on the amount of duties related to a tip-producing occupation that may be performed, so long as they are performed contemporaneously with direct customer-service duties and all other requirements of the Act are met" or are performed "for a reasonable time immediately before or after performing such direct-service duties." (Doc. 29-4 at 4.) This is consistent with prior opinion letters.

These two opinion letters are official interpretive guidance. See, e.g., In re Farmers Ins. Exch., Claims Representatives' Overtime Pay Litig., 481 F.3d 1119, 1129 (9th Cir. 2007) ("We must give deference to the DOL's interpretation of its own regulations through, for example, Opinion Letters."). Auer deference is warranted when an agency interprets an ambiguous term in a regulation. Courts must defer to the DOL's interpretation unless it is "plainly erroneous or inconsistent with the regulation." Auer, 519 U.S. at 461. Here, the opinion letters interpret the terms "dual job," "related duties," and "part of the time." 29 C.F.R. § 531.56(e). Defendants do not argue that either letter contains any language that is plainly erroneous or inconsistent with those terms or the rest of the regulation. Therefore, the

court will apply DOL's interpretations in its opinion letters to the consideration of Plaintiffs' dual occupation claim.

"Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" Erickson v. Pardus, 551 U.S. 89, 93 (2007) While "[s]pecific facts are not necessary," the complaint must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Id. (quoting Twombly, 550 U.S. at 555) (alteration in original); see also Karpel v. Inova Health Sys. Servs., 134 F.3d 1222, 1227 (4th Cir. 1998) (" Even under the liberal standards of the Federal Rules of Civil Procedure, . . . a plaintiff 'must at least set forth enough details so as to provide defendant and the court with a fair idea of the basis of the complaint and the legal grounds claimed for recovery.'" (quoting Self Directed Placement Corp. v. Control Data Corp., 908 F.2d 462, 466 (9th Cir. 1990))).

In this case, the only ground upon which the amended complaint rests is the twenty percent rule. (Doc. 6 at 13-15, ¶¶ 64-71.) It is also the theory Plaintiffs offered in their briefing to support their claim. (E.g., Doc. 35 at 20 (summarizing Plaintiffs' argument that "Hickory Tavern violated the FLSA's 20% Rule" and that the Defendants' legal authorities "are isolated cases that

ignore the national acceptance of the 20% Rule")).[11]  The only
mention of "dual occupation" appears in paragraph 30 of the amended
complaint, in which Plaintiffs merely describe where on Fact Sheet
#15 the language supporting the twenty percent standard is found.
(Doc. 6 at 7, ¶ 30.)  During the hearing on the pending motions,
Plaintiffs' counsel argued that their claim under the twenty
percent rule was necessarily a dual jobs claim.  However, neither
party briefed that issue, and Defendants opposed the
interpretation during the hearing.

Because the amended complaint lumps all non-tippable work
together, it is impossible to determine whether Plaintiffs have
set forth facts alleging a plausible dual jobs claim.  For example,
the current complaint fails to identify which, if any, pre- and
post-shift work is claimed to be part of another occupation under
DOL's dual occupation interpretations.  Allegations that non-
tippable work is "not related to generating tips" (e.g., id. at
11, ¶ 49) are alone insufficient because, as the DOL states, such
related duties "need not by themselves be directed toward producing
tips." (Doc. 29-1 at 3.)  Plaintiffs' first amended complaint

---

[11] Plaintiffs do cursorily refer to "claims of dual jobs and the 20%
Rule," which is no more than a reference to § 531.56(e)'s plain language
that establishes the dual occupation rule, and state that they "allege
pursuant to the FLSA that when such work is done and exceeds 20% of
Plaintiffs' workweek, they are essentially working 'dual jobs.'" (Doc.
35 at 2, 10.)  Of course, these merely restate Plaintiffs' allegation
that a violation the twenty percent standard is necessarily a violation
of § 531.56(e).

therefore fails to allege a claim under § 531.56(e)'s dual occupation standard.

The court has found that, having determined that Plaintiffs cannot sustain a claim merely on the twenty percent rule, the first amended complaint is subject to dismissal. However, because Plaintiffs argue they intended to pursue a dual occupation claim for pre-shift and post-shift work pursuant to § 513.56(e) and the DOL's guidance regarding it, Plaintiffs will be given thirty days within which to file an amended complaint to articulate the dual occupation claim they say they intend to pursue that is supported by the FLSA, its regulations, and the DOL guidance. See Feuerstein v. Simpson, 582 F. App'x 93, 97 (3d Cir. 2014) ("[C]ourts have consistently held that leave to amend may be granted without a formal motion." (citing inter alia N.Y. State Elec. & Gas Corp. v. Sec'y of Labor, 88 F.3d 98, 105 (2d Cir. 1996))).

## III. CONCLUSION

For the reasons stated,

IT IS THEREFORE ORDERED that the motion to dismiss (Doc. 28) will be GRANTED and the first amended complaint (Doc. 6) will be DISMISSED WITHOUT PREJUDICE in thirty days unless Plaintiffs file an amended complaint within that time alleging sufficient facts to support their dual occupation claim.

IT IS FURTHER ORDERED that Defendant's motion to strike (Doc. 22) and Plaintiffs' motion for conditional certification as a collective class (Doc. 38) are DENIED WITHOUT PREJUDICE AS MOOT.

                                    /s/    Thomas D. Schroeder
                                    United States District Judge

May 24, 2017