IN THE UNITED STATES DISTRICT COURT
             FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

VANESSA CHAVEZ, AMY BERLAK,      )
BROOKE GRAHAM, and MELISSA       )
VARNER, on behalf of             )
themselves and all others        )
similarly situated,              )
                                 )
               Plaintiffs,       )
                                 )
          v.                     )        1:16cv1019
                                 )
T&B MANAGEMENT, LLC, and T&B     )
CONCEPTS OF HICKORY, LLC, each   )
d/b/a HICKORY TAVERN,            )
                                 )
               Defendants.       )

## MEMORANDUM OPINION AND ORDER

THOMAS D. SCHROEDER, Chief District Judge.

This is a proposed collective action under the Fair Labor Standards Act, 29 U.S.C. § 201 et seq. ("FLSA"). Before the court is the second motion by Plaintiffs Vanessa Chavez, Amy Berlak, Brooke Graham, and Melissa Varner seeking conditional certification of an FLSA collective and approval of their proposed notice. (Doc. 58.) For the reasons set forth below, the motion for conditional certification will be granted in part and denied in part.

I. **BACKGROUND**

Defendants T & B Management, LLC and T & B Concepts of Hickory, LLC, each individually and collectively d/b/a Hickory Tavern (collectively, "Hickory Tavern"), operate approximately

twenty-three casual dining restaurants under the name "Hickory Tavern" throughout North Carolina, South Carolina, Alabama, and Tennessee. (Doc. 49 ¶ 16.) Plaintiffs are former Hickory Tavern employees who allege that the restaurant chain has engaged in a "systemic scheme of wage abuses against their tipped server and bartender employees at each restaurant it owned, operated and/or managed" by requiring Plaintiffs, and those similarly situated, "to spend a substantial amount of time performing general preparation and maintenance duties[1] during discrete time periods of their shifts when they did not serve customers." (Id. ¶ 1.) Plaintiffs bring this action collectively on behalf of themselves and those similarly situated, defined as "[a]ll hourly tipped employees of Hickory Tavern who work, or worked, as servers [or bartenders][2] at any of Defendants' Hickory Tavern restaurants from

---

[1] These maintenance duties include: attending pre-shift meetings, cutting and preparing garnishes, cutting lemons, brewing tea, portioning sugar for tea, preparing condiment cups, rolling silverware into napkins, making coffee, stocking cups, stocking server stations, filling ice bins, stocking straws, lining and distributing trash cans, preparing sanitizing bottles for cleaning, setting up patios, setting up ashtrays, wiping down tables and chairs, filling condiment pourers, setting up mats, emptying and dumping trash cans, breaking down server stations, breaking down soda machines, washing mats, vacuuming and cleaning vacuum cleaners, sweeping floors, stocking condiment shelves, cleaning coolers, cleaning shelves, cleaning coffee makers and pots, cleaning counters and stainless surfaces, taking inventory, cleaning wood surfaces with Murphy's Oil, and cleaning parking lots. (Doc. 49 ¶¶ 53, 55.)

[2] All named Plaintiffs bring this action on behalf of servers. (Doc. 49 ¶ 21.) In addition, Plaintiffs Amy Berlak and Melissa Varner bring this action on behalf of all bartenders who were employed by Hickory Tavern during the relevant time. (Id. at 6.)

2

August 1, 2013[3] through the present, and who Defendants did not pay minimum wage when they spent a substantial amount of time performing general preparation and maintenance work before and after their shifts serving customers." (Id. ¶ 21.)

Plaintiffs were paid $2.13 per hour while they worked as servers and/or bartenders, in addition to the tips they earned. (Id. ¶ 30.) Pursuant to the FLSA, Hickory Tavern can take a "tip credit" for tips earned by its servers and bartenders to meet the federal minimum wage requirement, as long as the tips, in combination with the employees' hourly wage, meet or exceed the federal minimum wage. (Id. ¶ 30.) However, based on the dual jobs regulation, Hickory Tavern cannot take a tip credit for hours worked by tipped employees when they spend a substantial amount of time on non-tip generating work, such as preparatory and cleaning tasks.[4] Plaintiffs claim they were performing dual jobs — one as

---

[3] Though Plaintiffs' second amended complaint provides August 1, 2013, as the start date for the opt-in class (Doc. 49 ¶ 21), the start date for the proposed class is June 23, 2014, as described in Plaintiffs' second motion for conditional certification. (Doc. 58 at 2.)

[4] The Department of Labor issued an opinion letter on December 20, 1985, discussed in the court's previous order (Doc. 48), which states that "[s]ection 531.56(e) deals with tipped employees who are performing dual jobs. As explained in this section, when an individual is involved in a tipped occupation and a nontipped occupation, the tip credit is available only for the hours spent in the tipped occupation. For example, when a maintenance person in a hotel also serves as a waiter or waitress, the tip credit is available only for the hours worked as a waiter or waitress." (Doc. 59-6 at 3.) Furthermore, the opinion letter notes that "where the facts indicate that specific employees are routinely assigned to maintenance-type work or that tipped employees spend a substantial amount of time in performing general preparation

a server and/or bartender and another as a preparation and cleaning employee — but that they were only being paid at the rate of $2.13 per hour for their tipped and non-tipped work. (Id. ¶ 3; Doc. 59 at 3.) Plaintiffs seek payment of the full minimum wage of $7.25 per hour, rather than $2.13 per hour, for their time spent in preparatory and cleaning work apart from their time engaged in tip generating work. (Doc. 49 ¶ 4.) Plaintiffs also seek liquidated damages, attorney's fees, and expenses. (Id.)

On August 1, 2016, Plaintiffs filed their complaint against Hickory Tavern. (Doc. 1.) Subsequently, Plaintiffs filed an amended complaint (Doc. 6) and a motion for conditional certification as a collective class (Doc. 38), while Hickory Tavern filed a motion to strike (Doc. 22) and a motion to dismiss (Doc. 28). On April 17, 2017, the court held a hearing on the pending motions.

On May 24, 2017, the court construed the relevant Department of Labor regulations to permit a "dual occupation" claim, and granted Hickory Tavern's motion to dismiss without prejudice to allow Plaintiffs to file a second amended complaint to raise such a claim for recovery of minimum wages for employees whose duties are either non-tippable and unrelated to the tippable occupation, or are non-tippable, related to the tippable occupation, and take

---

work or maintenance, we would not approve a tip credit for hours spent in such activities." (Id. at 4.)

place before or after tippable duties for "a substantial amount of time." (Doc. 48 at 23.)  The court also denied both the motion to strike and the motion for conditional certification as moot. (Id. at 30.)  Shortly afterwards, on June 23, 2017, Plaintiffs filed a second amended complaint, alleging that Hickory Tavern's payment practices violated the dual jobs regulation of the FLSA. (Doc. 49.)  On July 24, 2017, Hickory Tavern filed another motion to dismiss (Doc. 51), which was denied by the court on December 21, 2017 (Doc. 55).

On February 14, 2018, Plaintiffs filed the pending motion to conditionally "certify an opt-in class of all former and current tipped server and bartender employees at all Hickory Tavern restaurants from June 23, 2014 to the present." (Doc. 58 ¶ 1.)  The motion has been fully briefed and is ready for consideration. (Docs. 59, 64, 65.)  On September 12, 2018, the court held a hearing on the pending motion.

## II. ANALYSIS

### A. Motion for Conditional Certification

For any violation of the FLSA, an employee may bring a collective action on behalf of herself or "other employees similarly situated." 29 U.S.C. § 216(b).  To become part of the litigation, each "similarly situated" employee must file his or her written consent with the court. Id.  Employees are "similarly situated" when they "raise a similar legal issue as to coverage,

5

exemption, or nonpayment o[f] minimum wages or overtime arising from at least a manageably similar factual setting with respect to their job requirements and pay provisions." Solais v. Vesuvio's II Pizza & Grill, Inc., 1:15CV227, 2016 WL 1057038, at *5 (M.D.N.C. Mar. 14, 2016) (quoting McLaurin v. Prestage Foods, Inc., 271 F.R.D. 465, 469 (E.D.N.C. 2010)) (alteration in original).

FLSA class certification typically takes place in two stages.[5] Long v. CPI Sec. Sys., Inc., 292 F.R.D. 296, 298–99 (W.D.N.C. 2013); Hollis v. Alston Pers. Care Servs., LLC, No. 1:16CV1447, 2017 WL 3327591, at *2 (M.D.N.C. Aug. 3, 2017) (citing Solais, 2016 WL 1057038, at *5). The first stage is conditional certification, during which the court determines whether the employees' claims are "similarly situated" such that the distribution of court-approved notice to possible class members is merited. Long, 292 F.R.D. at 298; Clark v. Williamson, No. 1:16cv1413, 2018 WL 1626305, at *2 (M.D.N.C. March 30, 2018) (citing Hollis, 2017 WL 3327591, at *2). At the conditional certification stage, "[c]ollective action plaintiffs are not bound by Rule 23's requirements of numerosity, commonality, typicality

---

[5] "The term 'similarly situated' is not defined in the FLSA and the Fourth Circuit has not articulated how the 'similarly situated' requirement of § 216(b) should be applied." Long v. CPI Sec. Sys., Inc., 292 F.R.D. 296, 298 (W.D.N.C. 2013) (citing Gregory v. Belfor USA Grp., Inc., No. 2:12CV11, 2012 WL 3062696, at *2 (E.D. Va. July 26, 2012)). However, "the majority of courts in the Fourth Circuit adhere to the two-stage analysis contemplated by § 216(b)." Id. (listing decisions in the Fourth Circuit where the two-stage analysis was used).

6

and adequacy; they need only demonstrate that they are 'similarly situated' to proceed as a class." Clark, 2018 WL 1626305, at *2 (quoting Robinson v. Empire Equity Grp., Inc., No. WDQ-09-1603, 2009 WL 4018560, at *1 n.8 (D. Md. Nov. 18, 2009)); Solais, 2016 WL 1057038, at *5 n.6. If conditional certification is granted, the putative class members are provided with notice of the lawsuit and the opportunity to opt in, and discovery is conducted. Long, 292 F.R.D. at 299. If the defendant then files a motion for decertification, the court moves to the second stage, in which the court applies a "heightened fact specific standard" to the "similarly situated" inquiry. Id. (citing Choimbol v. Fairfield Resorts, Inc., 475 F. Supp. 2d 557, 563 (E.D. Va. 2006)).

The conditional certification standard is "fairly lenient," because "the court, and the parties, have minimal evidence at this point in the proceedings." Adams v. Citicorp Credit Servs., Inc., 93 F. Supp. 3d 441, 453 (M.D.N.C. 2015) (citation omitted). While the conditional certification standard is lenient, it is not a "rubber stamp approach," and "[m]ere allegations will not suffice; some factual evidence is necessary." Id. (citations omitted). To meet this burden, the plaintiff "need only make a relatively modest factual showing that a common policy, scheme or plan [that violated the law] exists." Id. (quoting Mitchel v. Crosby Corp., No. DKC 10-2349, 2012 WL 4005535, at *2-3 (D. Md. Sept. 10, 2012)). To meet the low burden for conditional certification, the evidence

must amount to "more than vague allegations with meager factual support," but "need not [] enable the court to determine conclusively whether a class of similarly situated plaintiffs exists." Id. At this stage, "the Court does not resolve factual disputes, decide substantive issues on the merits, or make credibility determinations." Solais, 2016 WL 1057038, at *6 (quoting Adams, 93 F. Supp. 3d at 454).

Plaintiffs argue that they have met the relatively modest bar required for conditional certification by alleging that "Hickory Tavern maintained a common policy of having its servers and bartenders spend a substantial amount of time performing pre-shift and post-shift preparatory and cleaning duties at discreet [sic] time periods before and after they served customers." (Doc. 59 at 18.)[6] They reiterate that the practices described in the second amended complaint violate the dual jobs regulation and claim that all members of the putative class are similarly situated. (Id.) Plaintiffs have also filed four declarations, one from each named Plaintiff, in support of their claims that state that they know other servers and bartenders who worked or are working at Hickory Tavern who want to join this lawsuit. (Id. at 18; Doc. 59-2 ¶ 23; Doc. 59-3 ¶ 26; Doc. 59-4 ¶ 22; Doc. 59-5 ¶ 29.) Plaintiffs'

---

[6] Plaintiffs also emphasize that Hickory Tavern referred to the opening and closing duties at all of its restaurants as "similar" in its answer to the second amended complaint. (Doc. 56 ¶¶ 42-43; Doc. 59 at 9.)

8

declarations also include evidence of training conducted at one Hickory Tavern location by employees from other locations, training materials provided to servers that were distributed at other Hickory Tavern locations, and explanations given to servers during training that the preparatory and cleaning tasks were part of server duties at other Hickory Tavern locations. (Doc. 59-2 ¶¶ 4-6; Doc. 59-4 ¶¶ 3-6; Doc. 59-5 ¶¶ 3-6.)

Hickory Tavern argues that Plaintiffs have not shown that the proposed class is similarly situated because their motion "rests precariously on just four now outdated declarations alleging personal experiences at four different Hickory Tavern locations," which Hickory Tavern claims have been rebutted by the declarations of five Hickory Tavern managers and one regional manager that it filed. (Doc. 64 at 2.) The declarations filed by Hickory Tavern note that each Hickory Tavern restaurant has a different general manager who oversees operations and that each general manager has significant control over the store under his or her restaurant. (Doc. 64-1 ¶ 7; Doc. 64-2 ¶ 5; Doc. 64-3 ¶ 4; Doc. 64-4 ¶ 6; Doc. 64-5 ¶ 5; Doc. 64-6 ¶ 4.) As such, Defendants claim that Plaintiffs have not identified a common plan or policy which violates the FLSA and that "Plaintiffs have brought personally distinct and individually fact-intensive claims of the sort that are simply untenable, unworkable, and inappropriate to adjudicate collectively under Section 216(b)." (Doc. 64 at 2.)

Conditional certification of the proposed class is appropriate here. While the declarations filed by Hickory Tavern indicate that its managers have some control over their stores,[7] each of these declarations described substantially similar practices.[8] Given the similarity between the practices described by the Plaintiffs' and Defendants' declarations, the court finds that Plaintiffs have adequately demonstrated that the members of the proposed class are similarly situated and have adequately demonstrated that there was a common plan at Hickory Tavern which violated the FLSA. Hollis, 2017 WL 3327591, at *3 (noting that a

---

[7] Defendants also note that Hickory Tavern instituted a new policy in May 2106 which pays bartenders and servers minimum wage while opening and closing tasks are being completed. (Doc. 64 at 5, 13.) This policy was instituted at all Hickory Tavern locations, suggesting that general managers are sometimes subject to formal company-wide payment policies for servers and bartenders and that a uniform change to the minimum wage practice at all Hickory Tavern locations was deemed necessary in May 2016.

[8] For example, each declaration includes a list of opening and closing tasks that servers and/or bartenders must complete before or after these shifts serving customers, including: brewing tea, brewing coffee, cutting lemons, stocking glasses, filling ice wells, making sure patios are clean and set up, stocking trash cans, making sure tongs and ice scoops are at the server stations, wiping down tables and chairs, rolling silverware, restocking and cleaning various sauce and condiment containers, restocking sugar caddies, dumping trash cans, breaking down server stations, cleaning surface areas and floors, cleaning mats, vacuuming, restocking towels and paper towels, cleaning woodwork and wiping it with Murphy's oil, stocking the bar area, cleaning the bar area  (Doc. 64-2 at 8-15; Doc. 64-3 at 7-11; Doc. 64-4 at 8-12; Doc. 64-5 at 7-13; Doc. 64-6 at 7-14.)  The declarations also support Plaintiffs' claims that Hickory Tavern servers and bartenders sometimes had to attend off-duty meetings for which they were not paid minimum wage and that they often had to attend pre-shift meetings. (Doc. 64-2 ¶¶ 14-15; Doc. 64-3 ¶ 14-15; Doc. 64-4 ¶ 19; Doc. 64-5 ¶ 15; Doc. 64-6 ¶ 15.)

plaintiff need only make a modest factual showing that a common policy that violated the law existed in order for conditional certification to be appropriate); De Luna-Guerrero v. The North Carolinas Growers Assoc., Inc., 338 F. Supp. 2d 649, 654 (E.D.N.C. 2004) (noting that, while the Fourth Circuit has not defined "similarly situated," in the context of conditional certification it means "similarly situated with respect to the legal and, to a lesser extent, the factual issues to be determined," and that "persons who are similarly situated to the plaintiffs must raise a similar legal issue as to [the FLSA violation] arising from at least a manageably similar factual setting with respect to their job requirements and pay provisions, but their situations need not be identical"); Knox v. Jones Grp., 208 F. Supp. 3d 954, 964–65 (S.D. Ind. 2016) (granting conditional certification where Plaintiffs' declarations contained allegations of uniform training and performing the same non-tipped work at other restaurants).[9] While Hickory Tavern argues that Plaintiffs misrepresent the amount of time they spent on their opening and closing duties, "the Court does not resolve factual disputes . . . or make credibility determinations" at this stage. Solais, 2016 WL

---

[9] This conclusion is supported by the fact that a number of potential plaintiffs have already attempted to opt in. (Docs. 7–19, 27.) Each attempt to opt in has been made by former employees of Hickory Tavern who worked in one of the four Hickory Tavern restaurants where the named Plaintiffs worked, even though each store ostensibly had a different manager. (Doc. 64 at 5 n.2.)

11

1057038, at *6 (quoting Adams, 93 F. Supp. 3d at 454). As such, the court grants Plaintiffs' motion for conditional certification and concludes that step one notice is appropriate.

Therefore, the court conditionally certifies the FLSA collective proposed by Plaintiffs and defines the class to include: all former and current tipped server and bartender employees at all Hickory Tavern restaurants from June 23, 2014. Because the cut-off date is disputed, it will be addressed below.

**B.    Notice to Potential Class Members**

Hickory Tavern argues that the court should not facilitate notice to the class on the grounds that Plaintiffs have not demonstrated sufficient evidence for conditional certification to be granted. (Doc. 64 at 18.) Plaintiffs argue that the court should facilitate notice to the putative class members, as they have no way of identifying and contacting all the current and former servers and bartenders at Hickory Tavern restaurants. (Doc. 59 at 19-20.) They claim that Hickory Tavern likely has access to the contact information for its current and former employees, so it is appropriate for the court to exercise its discretion to facilitate notice to the putative class. (Id. at 20.)

"The FLSA 'manifests a preference that when collective action certification is granted, a court-controlled notice be provided to potential putative plaintiffs, rather than permitting unregulated solicitation efforts to secure joinder by those individuals.'"

12

Adams, 93 F. Supp. 3d at 456 (quoting Colozzi v. St. Joseph's Hosp. Health Ctr., 595 F. Supp. 2d 200, 210 (N.D.N.Y. 2009)). Accordingly, the court has a "managerial responsibility to oversee the joinder of additional parties to assure that the task is accomplished in an efficient and proper way." Id. (quoting Hoffmann-La Roche Inc. v. Sperling, 493 U.S. 165, 170-71 (addressing parallel provision of Age Discrimination in Employment Act)). Time is of the essence for putative class members to join the litigation because the statute of limitations continues to run until opt-in plaintiffs file their written consent. See 29 U.S.C. §§ 255, 256.

Given the limited information available to Plaintiffs, the ease of access to the requested information by Hickory Tavern, and the time constraints for potential class members to opt-in to the litigation, the court finds that court-supervised notice is appropriate in this instance. See Adams, 93 F. Supp. 3d at 456. Subject to the limitations outlined below, the court finds Plaintiffs' requested relief appropriate.

Plaintiffs request that the court order Hickory Tavern to provide them with the "names, last known addresses, email addresses, and cellular telephone numbers of all putative class members." (Doc. 58 at 2.) They argue that the email addresses and phone numbers are appropriate because "[a]s we have become a mobile society, a person's 'email address and cell phone number

13

serv[es] as the most consistent and reliable method of communication.'" (Doc. 65 at 11 (citing <u>Irvine v. Destination Wild Dunes Mgmt., Inc.</u>, 132 F. Supp. 3d 707, 711 (D.S.C. 2015).) Plaintiffs further request that the court: (1) approve their proposed Notice of Conditional Certification (Doc. 59-7) and consent to join forms (Doc. 59-8); (2) order Hickory Tavern to publish the Notice of Conditional Certification at a conspicuous location at each Hickory Tavern restaurant; (3) allow notice by text message to be sent to the last known cell phone number for each member of the proposed class; (4) allow each class member ninety days to return their opt in forms for filing; and (5) allow reminder notices to be sent forty-five days after the initial notice is sent. (Doc. 59 at 20–21.)

Hickory Tavern argues that, in the event that the court does conditionally certify the proposed class, notice be limited to only the servers and bartenders who worked at the four restaurants where the Plaintiffs worked. (Doc. 64 at 18.) Hickory Tavern also argues that the notice should be limited to servers and bartenders who worked at Hickory Tavern before May 2016, as Hickory Tavern changed its policy in May 2016 to pay minimum wage to all servers and bartenders who worked before opening or after closing and this policy change would eliminate Plaintiffs' dual job claim. (<u>Id.</u> at 19; Doc. 64-1 ¶ 12.) In addition, Hickory Tavern argues that it should only have to provide Plaintiffs with the names and

14

addresses of the proposed class members, as disclosure of telephone numbers and email addresses raise privacy concerns and would allow Plaintiffs to contact class members in a way that would not allow Hickory Tavern to know what notification is actually being given to proposed class members. (Doc. 64 at 19–20.) Lastly, Hickory Tavern objects to Plaintiffs' request that notice of the conditional certification be posted at a conspicuous location in each of its restaurants because it would imply "that Hickory Tavern supports the collective action against it which it does not." (Id. at 20.) Hickory Tavern does not raise any specific objection to the content of the proposed notice, does not challenge the ninety day opt-in period, and does not respond to Plaintiffs' request to send a reminder notice forty-five days after the initial notice is sent.

Courts have discretion to permit limited discovery to facilitate notice in FLSA collective actions. Lee v. ABC Carpet & Home, 236 F.R.D. 193, 201–02 (S.D.N.Y. 2006) (collecting cases). While courts have routinely approved requests for home addresses and email addresses, courts have been more reluctant to authorize the disclosure of other private information, such as telephone numbers. See, e.g., Hart v. Barbeque Integrated, Inc., No. 2:17-CV-227-PMD, 2017 WL 4812591, at *7 (D.S.C. Oct. 25, 2017) ("Although email addresses are more routinely disclosed, district courts in this circuit have required a showing of a 'special need'

15

before requiring the disclosure of telephone numbers."). In addition, when exercising their discretion to facilitate notice of a collective action under the FLSA, district courts routinely approve initial notice to potential plaintiffs by regular mail, email, and posting at the defendant's workplace. See, e.g., Evans v. Caregivers, Inc., No. 3:17-CV-0402, 2017 WL 2212977, at *7 (M.D. Tenn. May 19, 2017) (approving notice to potential class members by regular mail, email, and posting in defendant's office locations); Arnold v. Acappella, LLC, No. CV BPG-15-3001, 2016 WL 5454541, at *4–5 (D. Md. Sept. 29, 2016) (approving notice by regular mail, email, and posting notices in the defendants' restaurants).

The court will direct Hickory Tavern to produce to Plaintiffs the names, last known home addresses, and email addresses of the putative class members who worked at a Hickory Tavern restaurant before the payment policy change in May of 2016. See Irvine, 132 F. Supp. 3d at 711–12 (directing defendant to produce names, dates of employment, cell phone numbers, current home phone number, current email address, and current mailing address of all potential plaintiffs in FLSA collective action.) However, the court will deny Plaintiffs' request for the production of the telephone numbers for all collective members as, absent a further showing of need, email should be adequate to facilitate notice to the putative class members and the court is concerned about the privacy of the

putative class.  Hart, 2017 WL 4812591, at *7.  The court will limit the notice to those who were employed by Hickory Tavern before May of 2016 because Plaintiffs have no record evidence that the policy change was not implemented, and Plaintiffs' counsel acknowledged at the hearing that the policy change would eliminate Plaintiffs' dual jobs claim thereafter.  Further, Plaintiffs' request to send a reminder notice forty-five days after sending the initial notice will be approved.  Knox, 208 F. Supp. 3d at 964–65 (approving the sending of reminder notices and noting that "[d]eadline reminders are commonplace").  The court will also direct Hickory Tavern to post the proposed notice in a prominent location viewable by all tipped server and bartender employees in each of its restaurants.  Lastly, although no objection has been raised as to the form of the proposed notice, the court has reviewed the proposed notice with care and finds that it is fair and appropriate.  The proposed notice (Doc. 59-7) is approved as submitted in all respects except for the class definition; the class definition shall be changed to "All current and former tipped server and bartender at any Hickory Tavern Restaurant from June 23, 2014, to May 2016," because of the May 2016 change to Hickory Tavern's minimum wage payment policy.

**III. CONCLUSION**

Based on these findings,

IT IS THEREFORE ORDERED as follows:

17

1. Plaintiffs' motion for conditional certification (Doc. 58) is GRANTED in part as to the FLSA collective, defined as:

> All former and current tipped server and bartender employees at all Hickory Tavern restaurants from June 23, 2014, to May 2016.

2. Plaintiffs' proposed notice (Doc. 59-7) is APPROVED, except that the FLSA collective definition shall be changed to "All former and current tipped server and bartender employees at all Hickory Tavern restaurants from June 23, 2014, to May 2016," and the opt-in period shall extend to ninety days from the date the notice is mailed to putative class members.

3. Plaintiffs' counsel is authorized to send the approved notice by first-class U.S. mail to the last known address of each putative plaintiff, who was employed by Hickory Tavern before the policy change in May of 2016, within fourteen (14) days of the entry of this order;

4. Plaintiffs' counsel is authorized to send an electronic copy of the approved notice to the personal email address (for former employees) or work email address (for current employees) of each putative plaintiff, who was employed by Hickory Tavern before the policy change in May of 2016, within fourteen (14) days of the entry of this order;

5. Plaintiffs' counsel is authorized to re-mail notices/postcards that are returned as undeliverable for those individuals for whom counsel can find better addresses;

6. Plaintiffs' counsel is permitted to send by first-class U.S. mail a reminder postcard to potential opt-in plaintiffs who have not returned their Consent Form, forty-five (45) days before the expiration of the opt-in period;

7. Defendants shall post the approved notice in a conspicuous place in each of its Hickory Tavern restaurants within fourteen (14) days of the entry of this order; and

8. Defendant shall provide Plaintiffs' counsel, in electronically readable/importable form, the names, addresses, and email addresses of all collective members, who were employed by Hickory Tavern before the policy change in May of 2016, within seven (7) days of the entry of this order. This information shall only be disseminated among Plaintiffs' counsel, and Plaintiffs' counsel may use this information only in connection with this litigation as permitted in this memorandum opinion and order.

      /s/   Thomas D. Schroeder
United States District Judge

September 14, 2018